IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD ALCIDE,

        Petitioner,

        v.                                  Case No. 1:26-cv-00249-KWR-GBW

MARY DE ANDA-YBARRA, *in her official capacity*
*as Field Office Director of Enforcement and Removal Operations*,
*El Paso Field Office*, *Immigration and Customs Enforcement*,
FNU LNU, *Warden of Cibola County Correctional Center*,
TODD M. LYONS, *in his official capacity as Acting Director*,
*Immigration and Customs Enforcement*, *U.S. Department of Homeland Security*,
KRISTI NOEM, *in her official capacity as Secretary*,
*U.S. Department of Homeland Security*,
PAMELA JO BONDI, *in her official capacity as Attorney General of the United States*,

        Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (Doc. 1). This Petition presents the narrow issue of whether Petitioner's parole was properly terminated prior to being detained. Because Petitioner was not given any written notice detailing the basis for the termination, the Court finds that Petitioner's parole was not terminated prior to his detention. Having reviewed the parties' arguments, exhibits, and the relevant law, the Court finds that the Petition is well-taken, and therefore, is **GRANTED**.

## BACKGROUND

Petitioner is a citizen of Haiti and entered the United States on September 19, 2024. Pet. ¶¶ 2, 27, Doc. 1. Petitioner arrived at the border with a scheduled appointment through the CBP One program, and he was paroled into the United States that same day. *Id.* ¶¶ 35–36. Respondents

simultaneously issued Petitioner a Form I-94 and Notice to Appear initiating removal proceedings. *Id.* ¶¶ 37–38. Petitioner's Form I-94 authorized parole until September 18, 2026. *Id.* ¶ 37.

On March 25, 2025, the parole program was terminated by notice in the Federal Register. Termination of Parole Process for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611 (Mar. 25, 2025). On April 11, 2025, Respondents sent a form email to many parolees stating that their parole would terminate in seven days. Pet. ¶ 39; Doc. 7 at 3. That same day, Petitioner's Form I-94 was adjusted to reflect that his parole would now expire April 18, 2025. Pet. ¶ 44. Petitioner was likely an attempted recipient of the form email, but Petitioner "does not recall receiving such an email." *Id.* ¶ 43. Respondents provide no email or declarations indicating that an email was ever sent to Petitioner or an email address associated with Petitioner.

On an unknown date in January 2026, Petitioner was arrested and detained by Respondents in Minnesota. Pet. ¶ 46. He was then transferred to detention facilities in Texas and New Mexico. *Id.* ¶ 48. On the date of filing this Petition, Petitioner is detained at Cibola County Correctional Center in Milan, New Mexico. *Id.* ¶ 27.

On February 4, 2026, the Court ordered Respondents to file an answer. Doc. 4 at 1. On February 25, 2026, Respondents filed their Response (Doc. 7), and three days later Petitioner filed his Reply (Doc. 8).

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A challenge to immigration detention is "properly brought directly through habeas."

*Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## DISCUSSION

Respondents contend that this Court does not have jurisdiction to review this Petition. Doc. 7 at 10–11. Petitioner argues that the Court has jurisdiction because he limits his challenge to "the legality of his parole termination without any individualized pre-deprivation process" and his subsequent detention without the chance for release. Pet. ¶ 17.

Petitioner argues that his parole was not properly terminated before he was arrested and detained. *Id.* ¶ 2. Thus, he posits that his parole remains valid while he is presently detained. *Id.* In the event the Court has jurisdiction, Respondents contend that Petitioner's due process rights have been met and that they lawfully terminated his parole prior to detaining him. Doc. 7 at 11–14.

The Court briefly addresses jurisdiction before turning to the merits of the Petition.

## I.    <u>The Court has jurisdiction.</u>

Respondents contend that the Court lacks jurisdiction to review § 1225(b)(1) determinations and that this matter is not ripe for judicial review while Petitioner's asylum claim is pending.[1] Doc. 7 at 11. Petitioner argues that the Court has jurisdiction, despite the jurisdiction

---

[1] Respondents argue that "while Petitioner's asylum claim is currently pending this matter is not ripe for judicial review." Doc. 7 at 11. Respondents provide no further analysis or case law explaining why Petitioner's habeas claim, which challenges his detention resulting from his parole termination, would not yet be ripe. A claim is not ripe if it rests upon "contingent future events that may not occur as anticipated or indeed may not occur at all." *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Petitioner challenges his detention and argues that his parole was terminated without sufficient notice. Pet ¶ 2. Petitioner is already detained, and his parole was not properly terminated. Thus, this claim does not rest at all upon contingent future events as the event has already occurred. The prudential ripeness considerations, the fitness of the issue for judicial review and the hardship to the parties from withholding judicial review, also favor finding this matter ripe. *Bennett*, 823 F.3d at 1326. This matter is fit for judicial review as it presents a legal question about the termination of Petitioner's parole and the parties have had adequate opportunity to develop the factual record.

stripping provisions of 8 U.S.C. § 1252, because he challenges his termination of parole under 8 U.S.C. § 1182(d)(5), not any determination made under 8 U.S.C. § 1225(b)(1). Doc. 8 at 2. The Court finds that it has jurisdiction since Petitioner does not challenge any determination under § 1225(b).

A court lacks jurisdiction to review "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i). No court may review "a decision by the Attorney General to invoke the provisions of [§ 1225(b)(1)]," "the application of [that] section to aliens," or "procedures and policies adopted by the Attorney General to implement [that section.]" *Vaupel v. Ortiz*, 244 F. App'x 892, 894 (10th Cir. 2007) (citing 8 U.S.C. § 1252(a)(2)(A)(ii)–(iv)). Although judicial review of "determinations made under § 1225(b)(1) is available in habeas corpus proceedings," the review is limited to the following determinations: (1) whether the petitioner is a noncitizen; (2) whether the petitioner was ordered removed under § 1225(b)(1); and (3) whether the petitioner can prove by a preponderance that she is a noncitizen lawfully admitted for permanent residence, is lawfully admitted as a refugee, or has been granted asylum. *Id.* (citing § 1252(e)(2)(A)–(C)).

While Respondents correctly assert that § 1252(a)(2)(A) bars judicial review of a § 1225(b)(1) determination, *see Vaupel*, 244 F. App'x at 895, Respondents incorrectly characterize Petitioner's challenge, *see* Doc. 7 at 10–11. Petitioner does not challenge any determination under § 1225(b)(1) or the application of that provision. Petitioner limits his challenge to the termination of his parole under § 1182(d)(5)(A) and the accompanying regulation 8 C.F.R. § 212.5(e). Pet.

---

There will be great hardship to Petitioner if the Court were to withhold judicial review as he would remain detained while his parole is still active. The Court finds that the matter is ripe.

¶¶ 2, 17. Respondents' argument provides no case law demonstrating that review of the termination of Petitioner's parole is barred by anything. Doc. 7 at 11. Rather, Respondents jurisdictional argument only addresses a possible review of "the § 1225(b)(1) determination" in the event "Petitioner ha[s] a valid parole claim." *Id.* The Court is presented with no challenge to a § 1225(b)(1) determination, and the Court only considers the procedural adequacy of the termination of Petitioner's parole under § 1182(d)(5)(A). Further, even if § 1252's jurisdiction-stripping provisions apply here, courts have jurisdiction to review the adequacy of a procedural precedent to a discretionary decision. *See Mukantagara v. Noem*, 164 F.4th 765, 771–72 (10th Cir. 2026) (finding that 8 U.S.C. § 1252(a)(2)(B)(ii) does not prohibit the review of a "nondiscretionary first step" that must precede a discretionary decision). Petitioner challenges the procedural adequacy of his parole termination, not the decision itself or any underlying § 1225(b)(1) determination. Petitioner's challenge to his detention arises from alleged procedural violations of a completely different statute, § 1182(d)(5)(A), and thus, § 1252 does not strip this Court of jurisdiction.

## II. Petitioner did not receive adequate written notice terminating his parole.

Petitioner argues that his "parole was not terminated in accordance with the law," and he is unlawfully detained since his parole remains valid. Pet. ¶ 2. He states that the mass email terminating parole impermissibly foregoes an individualized determination that is necessary to revoke his parole. Pet. ¶ 61. Respondents contend that Petitioner states no claim upon which relief can be granted and that his due process rights have not been violated because his parole was lawfully terminated. Doc. 7 at 11–13. Because Petitioner alleges that he "does not recall receiving such an email," and Respondents offer no evidence or argument to rebut that proposition, Petitioner's parole has not been properly terminated.

Applicants for admission may be released on parole on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The noncitizen must be returned to the custody he was in "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." *Id.* Parole automatically terminates when the parole period expires or when the noncitizen departs the United States. 8 C.F.R. § 212.5(e)(1) (2026). If parole does not automatically terminate, then if the purpose for the parole is accomplished or a designated official determines that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien." *Id.* § 212.5(e)(2)(i). If a specific "charging document" is served on the noncitizen, the charging document may constitute sufficient notice to terminate parole. *Id.* Parole "shall not be regarded as an admission of the alien." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1182(d)(5)).

Here, the Court finds that Petitioner's parole was not terminated "upon written notice" as required by 8 C.F.R. § 212.5(e)(2)(i). Even if Petitioner was "an attempted recipient" of the mass email terminating parole, he "does not recall receiving such an email." Pet. ¶ 43. Respondents assert that they "sent a form email stating that parole would be terminated within seven days," and they changed the expiration date of Petitioner's Form I-94. Doc. 7 at 3. However, Respondents neither claim to have sent this email to Petitioner specifically nor provide any evidence that Petitioner, or any email address associated with Petitioner, was ever sent this email. Respondents do not provide a declaration or affidavit that any email was sent to an email address associated with Petitioner. While Courts are split on the issue of whether an individualized, "case-by-case" determination is needed to terminate parole, *compare Doe v. Noem*, 152 F.4th 272, 285 (1st Cir. 2025) (finding that plaintiffs did "not demonstrate[] a strong likelihood [of showing] . . . that under

6

the statute, the Secretary must terminate these grants of parole under the CHNV program on an individual basis") *with Gabriel v. Bondi*, No. 25-cv-04298-KMM-EMB, 2025 WL 3443584, at *7 (D. Minn Dec. 1, 2025) (finding that "the parole statute" requires an individualized "preconditional determination"), the regulation explicitly states that "parole shall be terminated upon written notice to the alien," *see* 8 C.F.R. § 212.5(e)(2)(i). Respondents provide no evidence that Petitioner ever received, or was even sent, any written notice prior to the termination of his parole. Merely claiming that there was a mass email campaign terminating many noncitizens' paroles on April 11, 2025, is insufficient to demonstrate that Petitioner actually received the required "written notice" terminating his parole.

Petitioner did not receive a "charging document" that operates as sufficient written consent. 8 C.F.R. § 212.5(e)(2)(i) provides that "[w]hen a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified." A "charging document" is defined as a "written instrument which initiates a proceeding before an Immigration Judge." 8 C.F.R. § 244.1 (2026). As applied to Petitioner, these documents include "a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." *Id.* Petitioner states that on "information and belief," Respondents simultaneously issued Petitioner a Notice to Appear with his Form I-94. Pet. ¶¶ 37–38. Respondents do not provide any indication that a Notice to Appear was served on Petitioner at any time. *See* Doc. 7 at 2–4. Further, service of a charging document terminating parole while simultaneously granting parole through a Form I-94 would render the notice requirement a nullity. Respondents provide no indication that any charging documents were served on Petitioner during or prior to his arrest. *Id.* Respondents description of Petitioner's arrest is limited to "[o]n information and belief, in January 2026, ICE took Petitioner into custody in

Minnesota and later transferred him to Texas and then to New Mexico." *Id.* at 3. Therefore, the Court finds no indication that Petitioner received any charging document that sufficiently qualifies as written notice terminating his parole.

In sum, because there is no evidence that Petitioner ever received written notice, or that any written notice was ever sent to him, Petitioner's parole was not properly terminated when he was arrested and detained. Accordingly, the Court finds that Respondents have failed to follow the applicable procedural requirements to terminate Petitioner's parole pursuant to § 1182(d)(5)(A).

**III.    Respondents' failure to provide notice violates Petitioner's procedural due process rights.**

Respondents contend that "Petitioner has no due process protections beyond those afforded by statute." Doc. 7 at 12. Petitioner contends that Respondents' argument that Petitioner has no due process rights beyond those afforded by statute is ultimately irrelevant and that termination of parole requires a "pre-deprivation hearing" because he has due process rights stemming from his interest in his continued liberty as a parolee. Doc. 8 at 9. The Court finds that Respondents fail to afford Petitioner the minimal procedural due process he is entitled to.

The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. Under the Fifth Amendment, noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Thus, immigration detainees pending removal "are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

A noncitizen, subject to removal, is "entitled only to the Fifth Amendment guarantee of fundamental fairness." *Schroeck v. Gonzales*, 429 F.3d 947, 952 (10th Cir. 2005). Because

8

noncitizens "do not have a constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." *Sosa-Valenzuela v. Holder*, 692 F.3d 1103, 1112 (10th Cir. 2012). Beyond this minimal procedural safeguard, "any alleged liberty interest [in discretionary immigration relief] must be created by statute or regulation." *Id.* (quoting *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009)). In immigration proceedings, "a petitioner has no liberty or property interest in obtaining purely discretionary relief." *Arambula-Medina*, 572 F.3d at 828 (citation omitted). For a statute or regulation to create a liberty interest, it "must substantively limit the exercise of official discretion through specifically defined criteria that guide official decision making." *Sosa-Valenzuela*, 692 F.3d at 1112 (citing *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1293 (10th Cir. 2001)).

Courts considering due process claims consider whether there exists a protected liberty interest and whether the procedures provided afford the individual adequate process. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006); *see Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) ("To claim a violation of his right to procedural due process, Petitioner 'must have a liberty or property interest in the outcome of the proceedings.'" (quoting *Arambula-Medina*, 572 F.3d at 828)).

**A.  The regulation affords Petitioner a sufficient liberty interest.**

Here, the relevant regulation provides that "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [a designated official], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien." 8 C.F.R. § 212.5(e)(2)(i). Petitioner, as a result of being paroled into the United States, is "legally considered to be detained at the border

9

and hence as never having effected entry into this country." *Sierra Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). Therefore, the only due process rights afforded to Petitioner are the "minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." *Sosa-Valenzuela*, 692 F.3d at 1112. Beyond this procedural minimum, to create a liberty interest, a statute or regulation must "substantively limit the exercise of official discretion through specifically defined criteria that limit decision making." *Id.*

8 C.F.R. § 212.5(e) specifically limits termination of parole to two situations: (1) under § 212.5(e)(1), automatic termination "without written notice"; and (2) under § 212.5(e)(2)(i), "[i]n cases not covered by paragraph (e)(1)," on written notice. Petitioner's parole was not automatically terminated because he did not depart the United States, and his parole did not expire. *See* § 212.5(e)(1); *see also* Pet. ¶¶ 2, 46. Thus, in accordance with 8 C.F.R. § 212.5(e)(2)(i), Petitioner's parole needed to be terminated "upon accomplishment of the purpose for which parole was authorized," or when, in the opinion of a designated official, "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." In addition to these substantive limits on the official discretion to terminate Petitioner's parole, the regulation requires that the parole "be terminated upon written notice to the alien." 8 C.F.R. § 212.5(e)(2)(i).

Petitioner does not recall ever receiving written notice and Respondents provide no indication, such as an email or declaration, that written notice was ever sent to Petitioner. Pet. ¶ 43. Since 8 C.F.R. § 212.5(e)(2)(i) includes criteria that limit the official's decision to terminate parole,

Petitioner has a liberty interest in receiving written notice that explains the basis for his parole's termination in accordance with the terms provide by Congress. *See United States v. Gonzalez-Fierro*, 949 F.3d 512, 520 (10th Cir. 2020) ("[T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011))); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien is concerned."). Therefore, having determined that Petitioner has a sufficient liberty interest created by the regulation, the Court proceeds to determine whether, as applied to Petitioner, he received adequate process in the termination of his parole.

### B. Petitioner was not afforded adequate process.

Since the Court finds that Petitioner has a protected liberty interest, the Court must examine the adequacy of the procedure to ensure that the deprivation meets the demands of the Constitution. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). In analyzing a what process is due, courts must analyze "the governmental and private interests that are affected." *United States v. Muhtorov*, 20 F.4th 558, 624 (10th Cir. 2021) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). Courts should consider the following three factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value of additional procedural safeguards; and (3) the Government's interest, such as the function involved, and the fiscal and administrative burdens additional safeguards would entail. *Mathew*s, 424 U.S. at 335.

As to the first *Mathews* factor, even assuming Petitioner's interest only extends as far as Congress granted by regulation, Petitioner still has a substantial interest in his parole being terminated in accordance with regulatory procedures. Termination upon written notice to the

11

noncitizen after one of the specified determinations in 8 C.F.R. § 212.5(e)(2)(i) is the only procedural safeguard. *See United States v. Lagarda-Aguilar*, 617 F.2d 527, 528 (10th Cir. 1980) (holding that because the "requirement of written notice is the only safeguard . . . . [W]ritten notice is essential to effectuate a termination"). *Lagarda-Aguilar* found that the identical phrase, "parole shall be terminated upon written notice to the alien," from 8 C.F.R. § 212.5(b) (1979) "virtually compels [the conclusion] that . . . there must be written notice of parole termination." *Id.* BIA precedent, dealing with the 1979 version of 8 C.F.R. § 212.5, provides that "an alien is entitled to written notice of termination of parole prior to the institution of exclusion proceedings." *In re. O*, 16 I. & N. Dec. 344, 353 (BIA 1977) (finding that the "regulation in question is clear. . . . [A]liens are entitled to written notice of termination of their parole prior to the institution of exclusion proceedings"). Further, without ever receiving written notice that explained a basis for terminating his parole, Petitioner had no opportunity to be heard at all. Even under the minimal procedural safeguards, Petitioner is afforded the right to notice for an "opportunity to be heard at a meaningful time and in a meaningful manner." *Sosa-Valenzuela*, 692 F.3d at 1112. Petitioner's liberty interest in receiving notice prior to termination pursuant to 8 C.F.R. § 212.5 is especially substantial in that it is the only procedural safeguard that Congress put in place to protect Petitioner's parole. Therefore, the first *Mathews* factor weighs in Petitioner's favor.

The second *Mathews* factor also weighs heavily in favor of Petitioner. There is a great risk of erroneous deprivation of Petitioner's liberty and parole given that he was neither provided written notice nor a basis for the termination of his parole. Since Petitioner's parole did not terminate automatically, written notice is the only procedural safeguard provided beyond the determinations that need to be made by a designated official. *See* § 212.5(e)(2). Without providing Petitioner any written notice that explains a basis for terminating his parole, there exists a great

risk of erroneous deprivation. The enacting regulations do not provide for any procedure to challenge the termination of parole once it has been terminated. *See* § 212.5(e). Thus, the absence of any formal procedure to challenge parole termination renders the written notice requirement exceedingly important. Further, courts have found that parole does not terminate without written notice—actualizing the risk of erroneous deprivation as Petitioner would be considered presently detained while he is still entitled to parole. *See Lagarda-Aguilar*, 617 F.2d at 528; *In re. O*, 16 I. & N. at 353. The value of adhering to the regulatory safeguard, providing written notice, is very high. Because there are no other formal mechanisms for review or opportunities to be heard, written notice provides immense value to the noncitizen. Thus, the Court finds that the second *Mathews* factor weighs in favor of Petitioner.

The final *Mathews* factor, the Government's interest and fiscal or administrative concerns in using an additional safeguard, also weighs in favor of Petitioner. Respondents undoubtedly have an interest in enforcing their immigration policies. However, adhering to the only procedural safeguard put in place by Congress, the written notice requirement, would not cause substantial fiscal or administrative concerns. Respondents' interest in detaining Petitioner would not be substantively hindered, fiscally or administratively, by simply providing Petitioner written notice in accordance with 8 C.F.R. § 212.5(e)(2)(i). The Court does not wade into the dispute about how detailed or individualized such notice must be, which would affect the Court's view of the fiscal and administrative concerns, but the Court does find that some semblance of notice must be provided. None is provided here.

Accordingly, the Court finds that all three *Mathews* factors weigh in favor of Petitioner, and he has not been afforded adequate process, even under his limited procedural due process rights.

**IV.     <u>Only release provides a sufficient remedy.</u>**

Respondents contend that ordering Petitioner's release would be contrary to the law governing habeas proceedings because courts have repeatedly held that they lack authority to order release when a petitioner is "detained under § 1226(c)." Doc. 7 at 12. The Court disagrees with Respondents' characterization.

In essence, habeas is "a remedy for unlawful executive detention. The typical remedy is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243.

The Court is not convinced by Respondents' argument because Petitioner, as both parties agree, is detained pursuant to 8 U.S.C. § 1225(b)(1), not § 1226(c). Doc. 7 at 1; Doc. 8 at 3. Elsewhere in their Response, Respondents contend that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Doc. 7 at 1. Section 1225(b)(1)(B)(iii)(IV) provides that "[a]ny alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Thus, Petitioner does not have the possibility of a bond hearing since he is detained under § 1225(b)(1). Having found that Petitioner's parole has not be terminated, Petitioner is unlawfully detained without the possibility of a bond or parole hearing. Since Petitioner is unlawfully detained until his parole is terminated in accordance with 8 C.F.R. § 212.5(e)(2)(i), the appropriate remedy, if not the only remedy, is immediate release.

V. **The Court need not rule on Petitioner's remaining claims.**

Petitioner asserts several violations of due process, the INA, and the APA. Pet. ¶¶ 109–83. Because the Court grants habeas relief, the Court need not address Petitioner's additional claims or declaratory relief. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative"); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim).

VI. **Costs and fees under the EAJA.**

Petitioner requests an award of "reasonable attorney fees and costs pursuant to the Equal Access to Justice Act." Pet. at 38. In light of recent Tenth Circuit precedent, the Court finds that it may consider Petitioner's request for costs provided that he follows proper EAJA procedure.

The EAJA provides for the following procedure:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Tenth Circuit recently held that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1159, 1166 (10th Cir. 2025).

A fee award is required if (1) the petitioner prevails, (2) the Government's position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting § 2412(d)(1)(A)). While fees are authorized, the EAJA requires that Petitioner, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses" and allege that "the position of the United States was not substantially justified." § 2412(d)(1)(A), (B). Upon filing this application, the Government must justify its position in any underlying proceedings and district court litigation. *See Hackett*, 475 F.3d at 1170.

Since the Court grants Petitioner habeas relief, should Petitioner pursue costs and fees, he is instructed to file an EAJA application following the appropriate procedure.

## CONCLUSION

The Court finds that Petitioner's parole has not been lawfully terminated, and thus, he is unlawfully detained while possessing the entitlement to be paroled. Respondents provide no evidence or indication that Petitioner was ever given written notice that his parole would be terminated. Accordingly, the Court finds that Petitioner has not been given the required written notice to terminate his parole, and he is now detained while he is still entitled to parole. The Court will enter a separate judgment.[2]

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

---

[2] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (explaining that district court has authority to enforce its habeas judgment).

**IT IS FURTHER ORDERED** that Petitioner be immediately released under the same conditions of release that were previously in place prior to his detention within **24 hours** of the entry of this Order. Respondents are directed to not arrest and detain Petitioner again **prior to properly terminating his parole** with adequate written notice in accordance with 8 C.F.R. § 212.5(e).

**IT IS FINALLY ORDERED** that the parties shall file a joint status report within **seven (7) days** of the entry of this Order.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE